UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------- x
:
GAIL VOGEL                                             :         3:13 CV 1415 (JGM)
                                                       :
V.                                                     :
                                                       :
CAROLYN W. COLVIN                                      :
ACTING COMMISSIONER OF SOCIAL                          :
SECURITY                                               :         DATE: MARCH 31, 2015
                                                       :
------------------------------------------------------- x

RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE
DECISION OF THE COMMISSIONER, AND DEFENDANT'S MOTION FOR ORDER
AFFIRMING THE DECISION OF THE COMMISSIONER

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, seeks review of a final decision by the Commissioner of Social Security ["SSA"] denying plaintiff widow's insurance benefits ["WIB"] under Title II of the Social Security Act.

I.  ADMINISTRATIVE PROCEEDINGS

On May 18, 2006, plaintiff, Gail Vogel, applied for WIB as the divorced surviving spouse of the deceased wage earner, Joseph Vogel (a/k/a Joseph Spielvogel), pursuant to 20 C.F.R. § 404.336. (Certified Transcript of Administrative Proceedings, dated January 24, 2014 ["Tr."] 258-60). Plaintiff's application was denied initially and upon reconsideration. (Tr. 27-34; see Tr. 247-48).  On May 15, 2007, plaintiff filed a request for a hearing by an Administrative Law Judge ["ALJ"](Tr. 35; see also Tr. 36-41), and on January 30, 2008, a hearing was held before ALJ Sol A. Wieselthier, in Queens, New York, at which plaintiff appeared without counsel. (Tr. 525-44; see Tr. 42-47).  On April 29,

2008,[1] ALJ Wieselthier denied plaintiff's claim. (Tr. 48-53, 70-75).  On May 16, 2008, counsel appeared for plaintiff (Tr. 55-59, 115-16; see also Tr. 268), and on May 30, 2008, plaintiff filed her request for review.  (Tr. 54, 60, 64).  On December 15, 2008, the Appeals Council remanded the case back to the ALJ for a new hearing (Tr. 90-97, 159-64, 193-97), and a supplemental hearing was held in Queens, New York on March 17, 2009 before ALJ Wieselthier, at which plaintiff testified.  (Tr. 545-62; see Tr. 100-14).  On September 25, 2009, ALJ Wieselthier denied plaintiff's claim (Tr. 126-31, 165-70, 205-10), and on October 8, 2009, plaintiff again requested review of the ALJ's decision.  (Tr. 132-33).  On April 29, 2011, the Appeals Counsel again remanded the claim for another hearing.  (Tr. 216-20, 228-32).

A third hearing was held in Queens, New York on January 3, 2012 (Tr. 563-92; see Tr. 275-80),[2] and on August 2, 2012, ALJ Bruce Zwecker heard the case in Hartford, Connecticut.[3]  (Tr. 593-640; see Tr. 282-97, 299-314, 331-54, 390-93).  On September 20, 2012, ALJ Zwecker issued a decision again finding that plaintiff was not entitled to widow's benefits. (Tr. 12-21). On November 10, 2012, plaintiff requested a review of the hearing decision (Tr. 11, 495), which the Appeals Council denied on August 12, 2013, thereby rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 8-11).

---

[1] The ALJ's decision is erroneously dated April 29, 2007.  (Tr. 48).

[2] This hearing was held before ALJ Daniel Z. Nisnewitz, but ALJ Nisnewitz recused himself from the matter.  (See Tr. 563, 580-86).

[3] On or about May 8, 2012, plaintiff's case was transferred to a Hearing Office in Connecticut as she had moved from Queens, NY to Southington, CT.  (See Tr. 281, 298).

The hearing before ALJ Zwecker was originally scheduled for June 21, 2012 but was rescheduled to August 2, 2012 at the request of Joan Vogel, who was also a widow of Joseph Vogel, and who has been receiving widow's benefits on Joseph Vogel's account.  (See Tr. 299-314, 355-57).

On September 25, 2013, plaintiff, proceeding pro se, filed her complaint in this pending action (Dkt. #1),[4] and on February 18, 2014, defendant filed her answer. (Dkt. #13). On May 21, 2014, counsel appeared for plaintiff (Dkts. ##17-18), and on September 26, 2014, plaintiff filed her Motion to Reverse the Decision of the Commissioner, and Remand for a New Hearing, with brief in support. (Dkt. #23; see Dkts. ##19-22). On December 22, 2014, defendant filed her Motion for Order Affirming the Decision of the Commissioner, and brief in support. (Dkt. #27; see also Dkts. ##24-26).[5] Plaintiff filed her reply brief on January 12, 2015. (Dkt. #32; see Dkts. ##29-31).

For the reasons stated below, plaintiff's Motion for Order Reversing the Decision of the Commissioner, and Remand for a New Hearing (Dkt. #23) is granted, and defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. #27) is denied.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1943 (Tr. 30, 246), and was married to Joseph Vogel, a/k/a Spielvogel, the wage earner in this case, on January 12, 1974 in New York. (Tr. 43, 517; see also Tr. 529-30, 560). On February 23, 1978, plaintiff and Joseph Vogel entered into a Separation Agreement (Tr. 364-77), however, plaintiff testified that they "never really separated[,]" but rather, they had "a relationship that was back and forth but [they] never separated." (Tr. 530).[6] On March 13, 1992, Joan and Joseph Vogel obtained a

---

[4]Plaintiff also filed a Motion for Leave to Proceed In Forma Pauperis, which motion was granted two days later. (Dkts. ##2, 5).

[5]On the same day, plaintiff filed a certified copy of the administrative transcript, dated January 24, 2014. (Dkt. #28). There is some duplication in the record.

[6]Plaintiff also testified that she was Joseph Vogel's "third or fourth wife. And he had a propensity for women. . . . He was always married until he got remarried. . . . His marriages were one consecutive marriage after another." (Tr. 535-36; see also Tr. 611).

Joan Vogel confirmed that she was Joseph Vogel's fifth wife, the first marriage having been

3

certificate of marriage in Florida. (Tr. 418).[7] According to plaintiff, "till that time, to [her] knowledge, [Joseph Vogel] was married to [plaintiff] from 1974." (Tr. 537). Joseph Vogel died on February 26, 1996 in New York. (Tr. 359, 512).

At issue in this case is the length of marriage between plaintiff and the wage earner, Joseph Vogel, and whether and when plaintiff and the wage earner divorced. At her hearing in January 2008, held in New York, ALJ Wieselthier inquired whether Joseph Vogel traveled frequently, to explain why plaintiff "wrote to Haiti of all places[]" to find out if there was a record of divorce. (Tr. 541). Plaintiff responded that he did not travel often, but she "assum[ed]" that he obtained an uncontested divorce and that he then married Joan Vogel "within a couple of months[,]" and "assuming since [plaintiff] knew nothing about the divorce[,]" Haiti must have been where he went. (Tr. 541).

At plaintiff's second hearing, held on March 17, 2009 in New York, ALJ Wieselthier acknowledged that he needed to contact Joan Vogel, who was receiving WIB on Joseph Vogel's earnings record,[8] since her interests were implicated by this case. (Tr. 550-52). The ALJ sought to ask Joan Vogel if she knew if Joseph Vogel was divorced when they

---

annulled and the next three marriages having ended in divorce. (Tr. 621). (But see Tr. 517)(on New York Marriage License, Joseph Vogel's marriage to plaintiff was listed as his "second[,]" with a previous divorce in New York on September 13, 1973).

[7]The certificate indicates that Joseph Vogel's last marriage ended in divorce on February 28, 1978. (Id.).

[8](See Tr. 25-26).

married, and if so, when and where he divorced plaintiff. (Tr. 553, 555).[9] Accordingly, the ALJ "suspended" the case to "do some work." (Tr. 557).

At a third hearing held on January 3, 2012 in New York, the presiding ALJ, Daniel Z. Nisnewitz, started the hearing by announcing that he was "constrained to adjourn this matter once again" to give Joan Vogel the opportunity to attend the hearing. (Tr. 565). Plaintiff reported to the ALJ that she searched for divorce records in New York and in Haiti under both Vogel and Spielvogel. (Tr. 566-67). The ALJ directed plaintiff's counsel to search for a marriage record in Florida for Joan and Joseph Vogel or Spielvogel. (Tr. 567-68). The ALJ then noted that plaintiff, in her application for retirement benefits, "made a statement that [she was] divorced from [Joseph Vogel] [o]n March 1, 1978[,]" in response to which plaintiff testified that she had "no recollection of ever saying that." (Tr. 568-70).

Plaintiff testified that she last lived with Joseph Vogel "up until [the] late '80's[,]" when they were living on 69th Street in Manhattan. (Tr. 573-75). Plaintiff testified that they were never legally separated, and denied having a written separation agreement. (Tr. 575; but see Tr. 364-77). She continued to see him until he died in February 1996; in plaintiff's words: "From the time [that she] met him in 1972, through the time he died in 1996, he was in [her] life." (Tr. 576-77).

When asked about his connection to Haiti, plaintiff testified that "since [she] knew he remarried," Haiti is "nearby[]" on the "eastern seaboard[,]" "[t]he man never traveled

---

[9]In response to a June 30, 2009 letter from ALJ Wieselthier (Tr. 117, 119, 157, 187-88), Joan Vogel wrote: "Regarding the inquiry I really have no further information, as to when & where their divorce took place. I'm sorry I can't be of anymore help on this matter." (Tr. 118, 123, 158, 191, 256, 322). At the last hearing, Joan Vogel admitted that this response was not truthful, because she "wanted nothing to do with Gail Vogel. So I just said I know nothing. I did not want to get involved with any of this." (Tr. 628-31).

anywhere[,]" so "[she] just assumed [he filed for divorce in Haiti] since [she] never got served with papers." (Tr. 577). When discussions began about Joan Vogel, ALJ Nisnewitz realized he had a conflict and had to recuse himself. (Tr. 579-86).

On August 2, 2012, plaintiff, Joan Vogel, and counsel for both of the women,[10] appeared before ALJ Bruce Zwecker at a hearing held in Hartford, Connecticut. (Tr. 593-640). When she again was asked if she reported that she was divorced in 1978 when she filled out an application for retirement benefits, plaintiff responded, "I don't recall saying that[.]" (Tr. 599). Plaintiff testified that she was not served with divorce papers and she knows that Joseph Vogel remarried in 1992, so she "assumed that he got divorced in '92." (Id.; see also Tr. 603). Plaintiff similarly testified that she had searched for a record of divorce in the names Vogel and Spielvogel, in Haiti, Florida, and New York. (Tr. 601-04, 612). Plaintiff testified that following a "cataclysmic fight" in 1978, plaintiff and Joseph Vogel entered into a separation agreement and plaintiff moved to another apartment but continued to see Joseph Vogel "[every day.]" (Tr. 607-08).

Joan Vogel testified that Joseph Vogel produced a divorce decree from Haiti to the clerk when she and Joseph Vogel were married in 1992. (Tr. 620-21).

### III. DISCUSSION

#### A. GOVERNING REGULATIONS

Pursuant to 20 C.F.R. § 404.336, a claimant is entitled to widow's benefits as the surviving divorced wife of a fully insured wage earner if the following requirements are met:

---

[10]Joan Vogel appeared by videoconference from West Palm Beach, Florida with her counsel, and plaintiff's counsel appeared by videoconference from New York. (Tr. 596).

> (a) You are the insured's surviving divorced wife . . . and you meet both of the conditions in paragraphs (a)(1) and (2) of this section:
>
>> (1) You are validly married to the insured under State law as described in § 404.345 or are deemed to have been validly married as described in § 404.346.
>>
>> (2) You were married to the insured for at least [ten] years immediately before your divorce became final.

At issue in this case is 20 C.F.R. § 404.336(a)(2), that is, whether plaintiff was married to Joseph Vogel for at least ten years immediately prior to their divorce. Plaintiff bears the burden of proof to provide "convincing" evidence that she is entitled to widow's benefits. 20 C.F.R. § 404.708. With respect to when and whether a marriage had ended, a certified copy of the decree of divorce or annulment is the "preferred evidence[,]" 20 C.F.R. § 404.728(b), and, if provided, is generally found to be "convincing evidence[.]" 20 C.F.R. § 404.709. In deciding whether evidence is "convincing[,]" the following factors are considered: (a) whether the information contained in the evidence was given by a person in a position to know the facts; (b) whether there is any reason to give false information when the evidence was created; (c) whether the information contained in the evidence was given under oath, or with witnesses present, or with knowledge there was a penalty for giving false information; (d) whether the evidence was created at the time the event took place or shortly thereafter; (e) whether the evidence has been altered or has any erasures on it; and (f) whether the information continued in the evidence agrees with other available evidence, including the Commissioner's records. 20 C.F.R. § 404.708.

B. ALJ ZWECKER'S DECISION AND THE PARTIES' ARGUMENTS

As ALJ Zwecker recited in his decision, plaintiff's initial application for widow's benefits, dated May 18, 2006, was denied initially and upon reconsideration on grounds

that plaintiff "had failed to prove that she was married to the wage earner for at least [ten] consecutive years, and thus is not eligible for benefits." (Tr. 15). This conclusion was affirmed at the ALJ hearing level, although both decisions were subsequently remanded. (Id.; see Tr. 90-97, 159-64, 193-97, 216-20, 228-32).

Following the second remand order for the Appeals Council, ALJ Zwecker evaluated "three related issues:"

> 1. "whether proof of marriage termination exists, and whether the claimant is the wage earner's legal widow;"
>
> 2. "if a putative marriage existed between the wage earner and Joan Vogel, if there is no proof of divorce between the claimant and the wage earner;" and
>
> 3. "if the claimant is entitled to widow's insurance benefits, and if Joan's status as a widow is in any way changed."

(Tr. 16). The ALJ then concluded that there is proof that a divorce occurred on February 28, 1978 in Haiti, and thus plaintiff was not married to the wage earner for the requisite ten consecutive years, and she is not the wage earner's legal widow pursuant to 20 C.F.R. § 404.336; because there is proof of divorce between the claimant and the wage earner, as provided by Joan Vogel, Joan Vogel and the wage earner were not in a putative or deemed marriage as defined in 20 C.F.R. § 404.346; and because the claimant was not married to the wage earner for ten consecutive years, she is not entitled to widow's benefits, and the status of Joan Vogel as the wager earner's widow is unchanged. (Tr. 21; see id. 18-21).[11]

---

[11]The ALJ relied on a certificate from the Haitian government, submitted by Joan Vogel's attorney on September 11, 2012, more than one month after the hearing. (Tr. 19, 468-71, 474-78). After receipt of this document, the ALJ provided plaintiff's counsel with notice and informed counsel that he would "keep the record open for [ten] days from the date of [the] letter for [counsel] to comment upon, or otherwise respond to, this new evidence." (Tr. 472-73). The certificate, translated into English, certified that plaintiff filed a petition for divorce against Joseph

Plaintiff asserts that the Commissioner's decision should be reversed and remanded for a new hearing because the ALJ failed to apply New York state law as required by statute (Dkt. #23, Brief at 6; Dkt. #32, at 1-4); and on remand, the ALJ must address New York and Haitian law and practice. (Dkt. #23, Brief at 7-12).

Defendant concedes that the ALJ was required to apply the law of New York state, which is the state of the wage earner's residence at death, yet defendant asserts that remand is not required even though, as defendant states, "the ALJ[] fail[ed] to specifically reference the fact that he was applying, or needed to apply, the law of New York to determine the validity of the Haitian divorce[.]" (Dkt. #27, Brief at 15). That said, defendant contends that "if the ALJ correctly applied New York law, . . . he would have reached the identical conclusion rendered in his decision[]" (Dkt. #27, Brief at 15), as "[b]ased on substantial evidence of record, and in compliance with New York law, the ALJ properly found [p]laintiff was not married to the wage earner for ten years prior to their divorce . . . [which occurred] in Haiti in 1978." (Id. at 14).

C. STANDARD OF REVIEW

This Court will "set aside the ALJ's decision only where it is based upon legal error

---

Vogel in the Court of First Instance of Port-au-Prince; plaintiff was summoned to appear at a hearing held on the same day; and a divorce judgment entered. (Tr. 470-71).

Plaintiff argued that the Haitian certificate was fraudulent because she produced her passport which showed that she did not travel to Haiti at any time from June 18, 1976 to June 17, 1981. (Tr. 19-20; see Tr. 479-94). Plaintiff also argued that she was unable to pay the retainer fee to a company to secure divorce records from Haiti, but that Joan Vogel contacted the same company and was able to pay the required fee. (Tr. 479-80, 491-93). Plaintiff asserted that the divorce certificate was fraudulent because "it was obvious Joan Vogel's money was able to buy the desired document from Haiti without any actual consideration of the truth." (Tr. 480).

A passport under the name "Joseph Spielvogel a/k/a Vogel" (Tr. 384-87) was stamped upon entry in Haiti on February 26, 1978. (Tr. 387).

or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)(citation omitted). "Substantial evidence 'is more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998)(citation omitted). "Where there is a reasonable basis for doubt whether the ALJ applied the correct legal principles, application of the substantial evidence standard to uphold the ALJ's decision creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1987).

### D. DISCUSSION

It is undisputed that entitlement to the payment of widow's benefits based on an applicant's status as the legal widow is established by the law of the state in which the insured individual was domiciled at the time of death. Renshaw v. Heckler, 787 F.2d 50, 52 (2d Cir. 1986); see Cunningham v. Apfel, 12 F. App'x 361, 362 (6th Cir. 2001)(validity of marriage is governed by the laws of the state where the decedent had a permanent home when he died), cert. denied, 535 U.S. 1066 (2002); Burks v. Apfel, 233 F.3d 1220, 1222 (10th Cir. 2000)("The Social Security regulations provide that the laws of the state where the deceased insured had a permanent home . . . will apply in deciding the nature of [the] . . . relationship . . . and in determining whether [plaintiff] is a widow."); Everetts v. Apfel, 214 F.3d 990, 992 (8th Cir. 2000)("Under the Social Security Act, the plaintiff would be considered the wife of the wage earner if the courts of Missouri (the state where

both the plaintiff and the wage earner were domiciled) would find that the plaintiff and the wage earner were validly married at the time the wage warner died."); Melio v. Chater, 166 F.3d 1200, 1998 WL 777054, at *1 (2d Cir. 1998)(summary order)(claimant had to show legal marriage pursuant to the law of Washington, where decedent was domiciled when died).[12]

Joseph and Gail Vogel were married in New York, and Joseph Vogel was domiciled in New York at the time of his death; accordingly, New York law governs plaintiff's status as a widow. Yet, as defendant acknowledges, "it is unclear from the ALJ's decision which law he applied in determining the validity of the divorce[.]" (Dkt. #27, Brief at 16). In fact, the ALJ does not cite any law to reach his conclusion that a valid divorce occurred on February 28, 1978 in Haiti. (See Tr. 18-21).

"Where an error of law has been made that might have affected the disposition of the case," the Court "cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ[,]" Monge v. Astrue, No. 11-cv-5019(DAB)(DF), 2014 WL 5025961, at *14 (S.D.N.Y. Sept. 29, 2014), quoting Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)(citation

---

[12]Several decades ago, the Second Circuit, while analyzing the legislative history of the provision governing the availability of social security benefits to spouses, noted the importance of applying state law:

> [U]ntil 1960, widow's benefits were available only to applicants whose marriages to the wage earner were valid. Section 416(h)(1)(B) [of Title 42 of the United States Code] was added in 1960 because Congress recognized that it is sometimes difficult for an individual to determine, inter alia, whether or when a prior marriage has been validly ended. See S. Rep. No. 1856, 86 Cong., 2d Sess. 22, reprinted in 1960 U.S. Code Cong. & Admin. News 3608, 3629 ("[s]ince the State laws governing marriage and divorce are sometimes complex and subject to differing interpretations, a person may believe that he is validly married when he is not").

Thomas v. Sullivan, 922 F.2d 132, 137 (2d Cir. 1990).

11

omitted), as defendant urges the Court to do in this case.  Rather, "the Court must first ensure that the ALJ applied the correct legal standards, and then proceed to determine whether the Commissioner's decision was supported by substantial evidence."  Monge, 2014 WL 5025961, at *14 (emphasis added), citing Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).  In this case, the ALJ failed to apply the correct legal standard and remand is appropriate.

Defendant also asserts that "any error here was harmless where the 1978 Haitian divorce is one that is entitled to 'comity' by the state of New York."  (Dkt. #27, Brief at 16).  The ALJ, however, does not address the legality of the Haitian divorce under New York law.  Defendant then proceeds to apply New York law to explain that "if the ALJ correctly applied New York law, . . . he would have reached the identical legal conclusion rendered in his decision[.]"  (Id. at 15-16).[13]  The Second Circuit has rejected precisely this type of argument made by the Commissioner after the administrative decisions are

---

[13]Similarly, defendant argues that the "ALJ's finding that a bilateral divorce, valid under New York law, took place in Haiti in 1978 is supported by substantial evidence of record."  (Dkt. #27, Brief at 17).  Nowhere in the ALJ's decision does he state that a bilateral divorce occurred, let alone address the validity of a bilateral divorce in Haiti under New York law.  What the ALJ's decision does say is, "I find that the total evidence of record establishes that the claimant filed for and obtained a divorce decree from a court in Haiti on February 28, 1978, which terminated her marriage to the wage earner."  (Tr. 19).

Additionally, the ALJ held that plaintiff is estopped from invoking a provision of the Program Operations Manual System ["POMS"] to contest the Haitian divorce.  (Tr. 21).  Although plaintiff was the one who posited the application of POMS GN 00305.170, which provision provides that "the Agency will not consider a divorce valid unless at least one of the parties is domiciled in the jurisdiction granting the divorce[,]" plaintiff now, appropriately, notes that POMS are not binding.  (Dkt. #23, Brief at 12, citing Tejada, 167 F.3d at 775; Schweiker v. Hansen, 450 U.S. 785, 789 (1981)("the Claims Manual is not a regulation[,] . . . has no legal force, and it does not bind the SSA.")).  (See also Dkt. #27, Brief at 20); see Martinez v. Astrue, No. 3:07 CV 699(SRU), 2009 WL 840661, at *2, n.1 (D. Conn. Mar. 30, 2009).  The Commissioner contends that the ALJ's finding of estoppel is consistent with New York case law, but once again, there is nothing in the ALJ's decision to suggest that he applied New York law, nor that his estoppel finding was based on anything other than POMS GN 00305.170.  (Dkt. #27, Brief at 20-21; see Tr. 21).

articulated.  As the Second Circuit has made clear, "[a] reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'" Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999), quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962). See also Newbury v. Astrue, 321 F. App'x 16, 18 (2d Cir. 2009)(summary order); Whitehouse v. Colvin, No. 3:13 CV 894 (MPS), 2014 WL 4685187, at *10 (D. Conn. Sept. 19, 2014), citing Sec. & Exch. Comm'n v. Chenery, 318 U.S. 80, 87 (1943)("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")(footnote omitted).  Accordingly, this Court need not address whether, if New York law was properly followed, the ALJ's decision would have been supported by substantial evidence.  In a case such as this, it is the ALJ's duty to apply New York law to establish whether a valid divorce existed, and thus whether plaintiff is entitled to widow's benefits.  Accordingly, the ALJ's decision is reversed, and this matter is remanded for further proceedings consistent with this Recommended Ruling.

## IV. CONCLUSION

For the reasons stated above, plaintiff's Motion for Order Reversing the Decision of the Commissioner or Motion for Remand for a Hearing (Dkt. #23) is granted; and defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. #27) is denied.

The Clerk's Office is instructed that if any party files an appeal in this district court following the administrative decision made upon remand, any subsequent appeal initially is to be assigned to this Magistrate Judge, and then to the District Judge who issued the final Ruling that remanded the case.

The parties are free to seek the district judge's review of this recommended ruling. See 28 U.S.C. §636(b)**(written objection to ruling must be filed within fourteen calendar days after service of same)**; FED. R. CIV. P. 6(a), 6(e), & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated this 31st day of March, 2015 at New Haven, Connecticut.

                                              /s/ Joan G. Margolis, USMJ_____
                                              Joan Glazer Margolis
                                              United States Magistrate Judge